**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| AMERICAN NATIONAL FIRE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2:06-cv-224 |
| CLARENCE BORNS, P.C., CLARENCE BORNS, and BOWMAN HEINTZ BOSCIA & VICIAN, P.C., | ) ) ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

In December of 2000, several clients of the law firm of Bowman Heintz Boscia & Vician, P.C. ("Bowman"), received unsolicited copies of a complaint filed in a lawsuit between Bowman and one of its former clients. According to Bowman, attorney Clarence Borns and the law firm of Spangler Jennings & Doherty ("Spangler") distributed copies of this complaint to Bowman's clients because it contained statements that were less than flattering about Bowman – statements which Borns and Spangler believed would interfere with Bowman's business relations. Bowman subsequently filed a lawsuit in 2001 in Indiana state court against Borns and Spangler claiming that Bowman tortiously interfered with its business relations. When lawyers and law firms start suing one another, things tend to get messy and the protracted litigation that has followed – six years and counting – only proves that point.

Borns requested that its insurance carrier, Plaintiff American National Fire Insurance Company, defend and indemnify it against Bowman's lawsuit. After agreeing to defend Borns

1

under a reservation of rights, American National filed the present declaratory judgment action seeking a declaration of its coverage obligations under its policy.  American National now moves for summary judgment against all defendants [Doc. 27] and Defendant Borns cross-moves for summary judgment against American National [Doc. 33].   For the reasons below, the Court **GRANTS**, in part, Borns' Cross-Motion for Summary Judgment and **DENIES** American National's Motion for Summary Judgment.

## FACTUAL BACKGROUND

### 1. The Bowman Lawsuit

On December 13, 2001, Bowman filed a complaint in Lake County, Indiana, against Borns and Spangler, claiming that Borns and Spangler tortiously interfered with Bowman's business relations.  (This action will be referred to herein as the "Bowman Complaint.")  Bowman is a law firm whose business involves consumer debt collection.  (*Id*. ¶ 2.)  According to the allegations of the Bowman Complaint, Borns was a former senior partner of the predecessor law firm of Bowman Heintz, thereby giving him knowledge of Bowman's relationships with several large clients, including Sears and Chrysler.  (*Id*. at ¶ 4.)  At some point after his departure from the Bowman firm, Borns was employed by and affiliated with Spangler.  (*Id*. at ¶¶ 5-6.)

Bowman's relationship with Associates Financial Services Co., Inc. ("Associates") ultimately set the stage for Bowman's litigation against Borns and Spangler.  Associates engages in the business of issuing, servicing, and collecting on consumer loans.  (*Id*. at ¶¶ 7-9.)  Associates contracted with Bowman to provide legal services related to Associates' collection work in Indiana.  (*Id*. ¶ 11.)

In 1996, several partners of Bowman joined with other individuals to form American Assignment Company, LLC.  (Bowman Compl. ¶ 13.)  American Assignment purchased over 800 delinquent loans from Associates and turned these loans over to Bowman for collection.  (*Id*. at ¶¶ 14-15.)  In 1997, American Assignment discovered that Associates failed to provide paperwork for a number of the loans sold to American Assignment.  (*Id*. at ¶ 16.)  Bowman subsequently discovered that Associates had been receiving payments on loans purchased by American Assignment and that Associates had entered into settlement negotiations with owners of several of the loans it had sold to American Assignment.  (*Id*. at ¶¶ 17-18.)  Because of its potential exposure under the Fair Debt Collections Practices Act, Bowman requested that Associates report its collection of payments received on loans owned by American Assignment, but Associates refused.  (*Id*. at ¶¶ 17 & 19.)  American Assignment was sued multiple times under the Fair Debt Collection Practices Act as a result of Associates' actions. (*Id*. at ¶ 19.)

Given what had transpired, the relationship between the Bowman law firm and Associates deteriorated resulting in Associates filing a complaint against Bowman in November 1999.  Bowman refers to this as the "False Complaint" and for the sake of clarity I will adopt that nomenclature for purposes of this opinion without accepting that conclusion.  (*Id*. at ¶ 21.)  A copy of the False Complaint was not included when the present action was filed, but Bowman asserts that several of the allegations in the False Complaint filed by Associates were defamatory.  (*Id*. at ¶ 21.)  Bowman alleges that Borns, with the "assistance, aid and/or direction of Associates," distributed unsolicited copies of the False Complaint to Bowman's clients.  (*Id*. at ¶ 22.)  Borns handwrote the addresses on the priority mail envelopes which contained the False Complaint and sent the addressed envelopes by U.S. Mail.  (*Id*. at ¶ 27.)  At the times when

3

Borns took these actions, Borns was acting as an attorney and agent of Spangler. (*Id*. at ¶ 6.) Furthermore, when Borns took these actions, he was also acting as an agent for Associates since he represented Associates in several pending legal matters. According to the Bowman Complaint, Borns' actions were designed to harm Bowman and to interfere with contractual and business relationships between Bowman and its clients. (*Id*. at ¶ 29.)

### 2. American National Policy and Tender of Defense

American National issued a Lawyers Professional Liability Insurance Policy ("Policy") to Clarence Borns, P.C., with a policy period from July 1, 1999, until July 1, 2001. The Policy provides coverage for:

> . . . all sums in excess of the deductible amount . . . which the Insured shall become legally obligated to pay as damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD.
>
> (i)    caused by any act, error or omission for which the Insured is legally responsible, or
>
> (ii)   because of personal injury
>
> and, in each case, arising out of the rendering or failure to render professional legal services . . . .

(Policy Form TAU 8142 (5/98) XS at p. 1) Under the Policy, American National is also required to provide a defense for "any claim against [Borns] including the appeal thereof seeking damages to which this insurance applies even if any of the allegations of the suit are groundless, false, or fraudulent, provided, however, the Company shall have neither the right nor the duty to defend any disciplinary proceeding." (*Id.*) The Policy defines "Professional Legal Services" as "legal services and activities performed for others as a lawyer . . ." (*Id*. at p. 3.)

Prior to the filing of the Bowman Complaint, Borns gave notice of Bowman's potential

claim to American National.  When the Bowman Complaint was filed, American National agreed to provide a defense to Borns, subject to a reservation of rights.  In its February 4, 2002 reservation of rights letter to Borns, American National indicated that it would provide a defense to Borns in the Bowman lawsuit, but American National reserved its right to deny coverage at a later time.  After Borns exhausted his $25,000 self-insured retention limit under the Policy, American National began paying Borns' defense expenses.  On June 22, 2006, American National filed the present lawsuit, seeking a declaration that it is not obligated to defend or indemnify Borns against the Bowman lawsuit.  After the filing of the present action, American National has continued, subject to its reservation of rights letter, to provide a defense to Borns in the Bowman lawsuit.

## DISCUSSION

The interpretation of an insurance policy, like any other contract, is typically a question of law that this Court can resolve on summary judgment.  *See, e.g.*, *Fed. Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563 (7th Cir. 1997) (interpreting insurance policy and determining insurer's duty to defend as a matter of law).  When the court determines whether an insurance policy provides liability coverage for a particular lawsuit, the majority of the relevant facts, such as the terms of the insurance policy and the allegations in the underlying litigation, are typically undisputed.  The present case is no exception.  Here, the parties do not dispute the material facts; rather, they only disagree about the legal conclusions and the application of the terms of the insurance policy to the allegations in the Bowman lawsuit.

State law governs the substantive issues of a case when this Court's diversity jurisdiction is invoked.  *See Goetzke v. Ferro Corp.*, 280 F.3d 766, 779 (7th Cir. 2002).  Because none of the

5

parties raise a conflict of law issue in the present diversity action, this Court applies the substantive law of Indiana. *Mass. Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116, 1120 (7th Cir. 1998) ("the operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits").

Under Indiana law, insurance policies are subject to the same rules of construction as other contracts. *Pennington v. Am. Family Ins. Group*, 626 N.E.2d 461, 463-64 (Ind. Ct. App. 1993). When the policy language is clear and unambiguous, it should be given its plain and ordinary meaning. *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985). Here, American National claims that, under the language of the policy, it does not have a duty to defend Borns nor a duty to indemnify him.

The general rule is that an insurer's duty to defend is broader than its duty to indemnify. *Nat'l Fire & Cas. Co. v. West By & Through Norris*, 107 F.3d 531, 535 (7th Cir. 1997); *Federal Ins.*, 127 F.3d at 566 (citing *Seymour Mfg. Co., Inc. v. Commercial Union Ins. Co.*, 665 N.E.2d 891, 892 (Ind. 1996)). An insurer is obligated to defend its insured against suits alleging facts that might fall within the coverage of the policy. *Federal Ins.*, 127 F.3d at 566-67. While this standard has been described in a number of ways, "there is essentially only one standard – that the allegations of the complaint, including the facts alleged, give rise to a duty to defend whenever, if proved true, coverage would attach." *Id.* Only if there is no possible factual or legal basis on which the insurer might be obligated to indemnify will the insurer be excused from defending its insured. Lee R. Russ, 14 COUCH ON INSURANCE § 200:12 (3d ed. 2007); *see also Ticor Title Ins. Co. of Cal. v. FFCA/IIP 1988 Prop. Co.*, 898 F. Supp. 633, 638-39 (N.D. Ind.

6

1995) (if there is even a possibility of coverage, insurer is obligated to defend).

The plain language of the Policy requires American National to defend and indemnify Borns against any claims arising out of his rendering of "professional legal services"; therefore, the resolution of the present case turns on whether Borns' alleged conduct in the underlying action potentially arises out of his rendering "professional legal services." The Policy defines "professional legal services" as "legal services and activities performed for others as a lawyer." As noted in *Erie Ins. Group v. Alliance Environmental, Inc.*, 921 F. Supp. 537 (S.D. Ind. 1996), errors and omissions policies, including those covering legal malpractice, are intended to "insure a member of a designated calling against liability arising out of mistakes inherent in the practice of that particular profession or business." *Id.* at 544. For this reason, when determining whether one's potential liability arises from the rendering of professional services, courts must focus on the alleged acts themselves, and not just the title of the party performing the acts. *See, e.g., Atl. Lloyd's Ins. Co. of Tex. v. Susman Godfrey, LLP*, 982 S.W.2d 472, 476-77 (Tex. App. 1998). When the insured draws upon his professional knowledge, experience and training in taking some action, that is a professional service for insurance purposes. *Terre Haute First Nat'l Bank v. Pac. Employers Ins. Co.,* 634 N.E.2d 1336, 1339 n. 2 (Ind. Ct. App. 1993) (professional services involve specialized knowledge or skill, and is predominately mental or intellectual as opposed to physical or manual in nature).

In the present case, it is uncontested that Borns is an insured under the Policy, that the Bowman claim was made during the Policy's effective period, and that the Policy's $25,000 self-insured retention has been exhausted. The parties dispute only whether the allegations of the Bowman Complaint fall within the insuring agreement of the Policy, and more specifically,

whether the claims against Borns arise out of his rendering or failure to render professional legal services. American National contends that Borns' acts alleged in the Bowman Complaint do not amount to the rendering of professional legal services because they were merely manual tasks – *i.e.*, placing the allegedly defamatory complaint in the mail – and that did not require any specialized knowledge or training to perform. (*See* Pl.'s Reply Br. in Supp. of its Mot. for Summ. J. [Doc. 37] at pp. 2-3.)

This Court's starting point is the underlying complaint that Bowman filed against Borns. The Bowman Complaint alleges that Borns "is an attorney for Associates on certain Indiana consumer loan accounts" and that Borns was acting "as the agent for Associates" when he assisted in the distribution of the unsolicited copies of the False Complaint. These allegations establish that Borns – who had an existing attorney-client relationship with Associates on several litigation matters – acted under the direction of Associates and as an agent of Associates when he distributed the False Complaints. They further establish that when he distributed the False Complaints, Borns was acting "as an attorney and agent" of Spangler.

The Bowman Complaint further alleges that Borns assisted with the distribution of the False Complaint by addressing the envelopes containing the False Complaint and then delivering these envelopes through the U.S. Mail. According to the Bowman Complaint, Borns distributed the False Complaints to various Bowman clients at the direction of Associates. It is true that these actions appear to be nothing more than administrative acts that do not typically qualify as "professional legal services." Nonetheless, the Bowman Complaint leaves open the possibility that Borns performed these tasks in the course of his representation of Associates. Indeed, American National candidly admits that the allegations in the Bowman Complaint are "not clear"

as to why Borns distributed copies of the False Complaint and that it can only "presum[e]" Borns' purpose in sending the False Complaint to Bowman's clients.  (Pl.'s Br. in Supp. of Mot. for Summ. J. [Doc. 28] at pp. 8-9.)

Despite its admission that the underlying allegations are unclear, American National urges this Court to speculate that Borns sent copies of the False Complaint to the Bowman clients in order to shake those clients' confidence in Bowman or to intentionally harm Bowman (*id*. at pp. 8-9, n. 3), thereby placing the allegations outside the scope of the Policy's insuring agreement and eliminating any potential obligation to defend Borns in the Bowman lawsuit. However, it is possible that Borns contacted Bowman's clients intending to either elicit testimony from them or to interview them in the lawsuit arising out of the False Complaint.  It is altogether possible that Borns forwarded copies of the False Complaint to the clients to illustrate the type of information he was seeking from them.  It is equally possible that Borns subpoenaed the Bowman clients for depositions or documents, and he only provided the clients with copies of the False Complaint as a professional courtesy (e.g., providing sufficient information about the case to allow the clients to respond to the subpoenas).  If this is what occurred, these would be actions involving professional judgment and would thus be within the scope of the policy. The bottom line is that the allegations of the Bowman Complaint, when liberally construed, fail to establish that there is "no possible" factual basis upon which American National might eventually be obligated to indemnify under the Policy.  Nothing else is needed to obligate American National to defend Borns in the lawsuit.  *See, e.g.*, Lee R. Russ, 14 COUCH ON INSURANCE § 200:12 (3d ed. 2007) ("only if there is no possible factual or legal basis on which the insurer might be obligated to indemnify will there be no duty to defend"); *Tews Funeral*

9

*Home, Inc. v Ohio Cas. Ins. Co.*, 832 F.2d 1037 (7th Cir. 1987) (duty to defend arises when there is a "mere possibility of recovery under the policy"). In sum, because there is a possibility of coverage, American National must defend Borns.

The next question is whether American National has a duty to indemnify Borns. American National seeks a declaratory judgment stating that they do not. I must look to federal law to determine if that request is premature. *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003). The Seventh Circuit has repeatedly held that for purposes of the Declaratory Judgment Act, 28 U.S.C. § 2201, "decisions about indemnity should be postponed until the underlying liability has been established." *Lear Corp.*, 353 F.3d at 583. *See also Nationwide Ins. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995); *Grinnel Mut. Reins. Co. v. Reinke*, 43 F.3d 1152, 1154 (7th Cir. 1995); *United Nat'l Ins. Co. v. Dunbar & Sullivan Dredging Co.*, 953 F.2d 334, 338 (7th Cir. 1992) ("[w]here there is a duty to defend, the duty to indemnify must await resolution of the underlying suit").

It is true that the Seventh Circuit noted in *Lear* that a district court may find it prudent to consider the duty to indemnify question early on in certain cases, especially where the court has devoted considerable effort to determine the scope of the defense obligation. *Lear Corp.*, 353 F.3d at 583. But the judgment is a discretionary one guided in part on the likelihood that the insured will in fact be liable in the underlying litigation and the amount of damages at stake. *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 680 (7th Cir. 1992). Based on the record presently before me, I simply cannot determine what the likelihood is that Borns will be found liable; nor can I determine what the damages are likely to be. Under these circumstances,

10

it is more prudent to wait and see if there is a finding of liability and only then take up the question of whether there is a duty to indemnify.

## CONCLUSION

For the reasons stated, American National's Motion for Summary Judgment [Doc. 27] is hereby **DENIED** and Defendant Borns Cross-Motion for Summary Judgment [Doc. 33] is **GRANTED**, in part.  The clerk shall enter judgment in favor of Defendants and against Plaintiff.

**SO ORDERED.**

ENTERED: September 18, 2007

<u>s/ Philip P. Simon</u>
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT